McGARRY, *Appellant,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Respondent.*
(No. 419-736, CA 5330)
547 P2d 654

*Nick Chaivoe,* Portland, argued the cause and filed the brief for appellant.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

FOLEY, J.

**FOLEY, J.**

The sole issue in this case is whether claimant is entitled to additional medical expenses for specialized treatment of a physically disabling condition resulting from a compensable injury, as provided by ORS 656.245(1).[1]

Claimant initially sought workmen's compensation benefits in July 1968 after sustaining a compensable industrial injury while moving a water heater during his employment as a plumber. As a result of this injury, claimant was awarded 64 degrees for an unscheduled neck disability and 19 degrees for partial loss of use of his left arm.

Claimant initiated this claim for additional benefits in July 1974. After hearing, a referee of the Workmen's Compensation Board determined that claimant's present condition resulted from his compensable injury and that the treatment claimant was receiving from Dr. Robert E. Rinehart was medical services which the State Accident Insurance Fund had an obligation to provide under the provisions of ORS 656.245(1). The Fund appealed and the Workmen's Compensation Board reversed on the ground that claimant was not entitled to medical expenses for the specific treatment recommended by Dr. Rinehart. The circuit court affirmed and claimant appeals. We reverse.

The following statement of facts from the referee's opinion and order adequately sets forth the nature of claimant's condition as well as the specific treatment program recommended by Dr. Rinehart:

"* * * * *

---

[1]"For every compensable injury, the direct responsibility employer or the State Accident Insurance Fund shall cause to be provided medical services for conditions resulting from the injury for such period as the nature of the injury or the process of the recovery requires, including such medical services as may be required after a determination of permanent disability. Such medical services shall include medical, surgical, hospital, nursing, ambulances and other related services, and drugs, medicine, crutches and prosthetic appliances, braces and supports and where necessary, physical restorative services." ORS 656.245(1).

"Claimant testified that about six months subsequent to surgery Dr. White released him for light work, but he became bedridden with severe shooting pains in the left chest and continued severely disabled, largely bedfast, with muscle cramps in the left arm and down the left chest, low back pain, and pain in the left hip and legs up to the time he was seen by Dr. Rinehart in June 1974. He presently continues to have symptoms similar to those he had prior to receiving treatment from Dr. Rinehart but the symptoms have lessened; whereas he could not turn his neck prior to seeing Dr. Rinehart, he now has good rotation of the neck; he has substantially less headache than he had prior to being seen, and less severe pain in the low back, neck, hip and legs. He considers himself much better after starting treatment with Dr. Rinehart both physically and emotionally.

"Claimant's wife testified to marked improvement in claimant's physical and emotional health since beginning treatment with Dr. Rinehart.

"Dr. Rinehart is a rheumatologist, specializing in the diagnosis and non-surgical treatment of diseases of the muscles, bones and joints. Following internship at Multnomah Hospital he had a year and a quarter of study at the Mayo Clinic. He is an assistant clinical professor of medicine at the University of Oregon Medical School where he has been a faculty member for 20 years. He testified that when claimant was seen in June 1974 his complaints were aching numbness and weakness of the left arm and shoulder, cramps of the upper left chest and left arm, pain in the hip joints, pain down both legs and pain in the elbows and knees. Claimant indicated that he was unable to hold a job, that he had severe aching when he moved about, cramping of the muscles which kept him awake and that he had been 'fatigued out' for over four years. Dr. Rinehart found claimant's muscles hard and full of lumps in varying degrees, rotation of the neck severely diminished, and grating in the left shoulder on movement; X-rays showed damage to the bones and joints to be present, but he considered this not to be of sufficient significance to explain claimant's symptoms.

"* * * * *

"* * * Dr. Rinehart advised that he * * * had reviewed the reports of five orthopedic and neurological

specialists who had previously seen him. On the basis of the reports, claimant's history, and his own examination, Dr. Rinehart concluded * * * that injuries sustained by claimant prior to 1968 had contributed to his continuing disability but 'his present total disability is largely a result of the injury he described as occurring on July 10, 1968'. * * *

"* * * * * *

"Dr. Rinehart diagnosed 'fatigue spasm of the muscles'. He opined that the injury had caused inflammation with automatic involuntary bracing of the muscles to restrict movement in the area of the injury, and that a habit pattern of muscle tension with continuous bracing and spasm of the muscles and resultant fatigue had ensued. He opined that this is an instinctive reaction to the injury and to the uncertainty generated by the symptomatology. He instituted treatment in July 1974 to break the disabling habit pattern. The program of treatment aims to correct the muscular bracing habit pattern phenomena by establishing a supervening habit pattern. The program consists of instructing the patient for better understanding of his neurological, biochemical, and psychological makeup and training him in new patterns of muscular relaxation under the supervision of a physical therapist, with continuing practice by the patient of new habit patterns for a period of time estimated to extend for 12 to 36 months. Dr. Rinehart opined that completion of the regimen would offer a 75% probability that claimant would return to work and a 95% probability that he would be made comfortable. He noted that during the period of treatment up to the time of the hearing claimant had been made considerably more comfortable and was gradually improving.

"* * * * * *

"Dr. Rinehart acknowledged that the muscle bracing syndrome is not recognized by a majority of physicians or generally accepted by members of the medical profession in the State of Oregon. It does appear that many aspects of his treatment regimen are used by psychiatrists and other medical practitioners. The whole range of treatment, however, is virtually unique to his own practice although it has been followed successfully by a few physicians in Oregon.

"* * * * * *."

[ 887 ]

■ Under the provisions of ORS 656.245(1), a claimant is entitled to medical expenses "for such period as the nature of the injury or the process of the recovery requires" if he proves by a preponderance of the evidence that his deleterious condition resulted from a compensable injury. *Bowser v. Evans Product Company,* 270 Or 841, 530 P2d 44 (1974); *see also Francoeur v. SAIF,* 17 Or App 37, 520 P2d 477, Sup Ct *review denied* (1974). We have held that the medical expenses contemplated by the statute are those which are "necessarily and reasonably incurred in the continued treatment of the injury" for which the claimant has received workmen's compensation benefits. *Wait v. Montgomery Ward, Inc.,* 10 Or App 333, 338, 499 P2d 1340, Sup Ct *review denied* (1972).

■ Upon a review of the record, we agree with the referee that claimant's present condition for which he seeks additional medical expenses did result from his industrial injury.

The more difficult issue is whether Dr. Rinehart's particular method of treatment is necessary and reasonable toward the improvement of claimant's disabling condition. As required by *Wait v. Montgomery Ward, Inc.,* supra, the Board based its determination that Dr. Rinehart's treatment was not necessary and reasonable on his admission that the method of treatment he had adopted was not generally accepted by the medical profession.[2]

■■ While a finding that a particular approach to treatment is contrary to the prevailing views of the medical profession may, in some cases, provide a sound basis for the Board to conclude that treatment is not reason-

---

[2] The Board summarized its determination in the following manner:

"* * * * *

"The Board has held, in essence, that Dr. Rinehart's views are not accepted by the medical profession generally and the Board does not believe it is in a position to discount the completely opposing prevailing views of the medical profession and accept Dr. Rinehart's plan of treatment. * * *

"* * * * *."

able and necessary, *see generally State ex rel Cady v. Allen,* 254 Or 467, 460 P2d 1017 (1969), our review of the record in this particular case convinces us that claimant has proven the reasonableness and necessity of Dr. Rinehart's treatment program by a preponderance of the evidence, notwithstanding the novelty of his method of treatment. The referee found the testimony of Dr. Rinehart "most persuasive" as it related to the efficacy of the treatment claimant was receiving at the Rinehart Clinic. He considered all the witnesses credible and concluded that the lay and medical testimony produced by claimant tended to show that the treatment in question had actually improved claimant's physical and emotional condition and that there was no testimony refuting this evidence.

In our de novo review, we give appropriate weight to the findings of the referee who saw and heard the witnesses when the resolution of a particular issue turns upon the credibility of witnesses. *Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971). Where, as here, the referee is persuaded by the witnesses that a claimant's treatment is, in fact, alleviating his deleterious condition, we cannot say that the treatment is per se unreasonable or unnecessary because the method of treatment is not generally accepted by the medical profession. We conclude, then, that claimant has proven by a preponderance of the evidence that the treatment in question was reasonable and necessary under ORS 656.245(1) and that he is entitled to medical expenses for the treatment. *Wait v. Montgomery Ward, Inc.,* supra, *Bowser v. Evans Product Company,* supra.

Reversed and remanded.

**SCHWAB, C. J.,** dissenting.

ORS 656.245(1) specifically requires that medical expenses must be for "conditions resulting from the injury." *Francoeur v. SAIF,* 17 Or App 37, 40, 520 P2d

477, Sup Ct *review denied* (1974). My examination of the record leads me to the conclusion that the circuit court correctly decided that claimant had failed to prove that a

> "* * * substantial or material causal relationship existed between the need or necessity for treatment afforded * * * and the compensable injury of July, 1968 * * *."

For the foregoing reason I respectfully dissent.