Argued and submitted April 11, affirmed August 29, 1984

# POOLE,
*Petitioner,*

*v.*

# STATE ACCIDENT INSURANCE FUND CORPORATION,
*Respondent.*

(81-08408; CA A28966)

686 P2d 1063

Karol Wyatt Kersh, Salem, argued the cause for petitioner. On the brief were Steven R. Huff, and Karol Wyatt Kersh & Associates, P.C., Salem.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The main issue in this workers' compensation case is whether the carrier is responsible for payment of claimant's bills for chiropractic treatment. The Workers' Compensation Board concluded that the condition for which claimant received the treatment did not result from his compensable injury and so the carrier is not responsible. We affirm.

Claimant, a draftsman, compensably injured his back in March, 1978, when he lifted some desk drawers. In August, 1980, he received an award of 20 percent permanent partial disability. Shortly before that, claimant had begun treatment with a chiropractor, Dr. Nickila, who submitted his bills to SAIF. SAIF paid until March, 1981, when it requested information from Dr. Nickila about the relationship between the treatment and claimant's on-the-job injury. Dr. Nickila did not respond, and SAIF held the bills without paying them and without notifying claimant. In March, 1982, Dr. Nickila finally responded to SAIF but he focused on his own legal conclusion regarding the binding effect of the 1980 award. Finally, at the hearing on May 5, 1982, SAIF denied responsibility for the chiropractic treatment.[1] Pursuant to ORS 656.262, claimant requested a penalty and attorney fees for SAIF's unreasonable delay in denying.

The first issue is the relationship between Dr. Nickila's treatment and the 1978 injury. Under ORS 656.245(1),

> "[f]or every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions resulting from the injury for such period as the nature of the injury or the process of the recovery requires, including such medical services as may be required after a determination of permanent disability. * * * The duty to provide such medical services continues for the life of the worker."

SAIF contends that claimant's chiropractic treatments are for a degenerative disease unrelated to the 1978 injury. As with compensability in general, claimant has the burden of proving that the condition for which he receives medical services was

---

[1] Claimant does not contend that SAIF is foreclosed from denying responsibility to pay the medical bills because of the payments of the earlier bills.

caused by his compensable injury and that the treatment is reasonable and necessary. *SAIF v. Forrest,* 68 Or App 312, 680 P2d 1031 (1984); *see also McGarry v. SAIF,* 24 Or App 883, 547 P2d 654 (1976). We conclude that claimant has not met his burden.

After the original injury, claimant first saw Dr. Drips, his family physician, whose impression was "acute lumbosacral strain, superimposed on pattern of prior low back strain." Later that year claimant was hospitalized, and Dr. Drips' diagnosis was "chronic relapsing lumbar strain." Dr. Tiley, an orthopedic surgeon, began treating claimant. He noted early degenerative disc disease with "chronic positional strain," explaining that claimant's drafting work caused chronic tension in the spinal support musculature. In mid-1979 an examiner at the Callahan Center also diagnosed chronic lumbar back strain.

Those examiners who noted the degenerative disease did not imply that it was in any way caused by claimant's employment. While claimant was at the Callahan Center Dr. Loeb, a psychologist, concluded that there was a psychological element in claimant's condition. In making the award of permanent partial disability in 1980, the referee found that claimant had a "conversion reaction" precipitated by his injury by which he was incapacitated to some extent by his focus on a strain which normally would have resolved over time. The referee also noted that "the degenerative changes are a result of age."

Claimant relies on the reports and testimony of Dr. Nickila. In a letter to claimant's attorney, Dr. Nickila stated conclusorily that his treatments were "necessary to treat the partial permanent residuals from the 1978 work injury." At the hearing he agreed that claimant has a degenerative back condition, but said that the compensable injury affected his ligaments, creating a propensity of "resubluxation" of his joints, which in turn creates nerve pressure. Although he stated that claimant had some disc problems, he felt that the injury was the cause of his sciatica.

Controverting Dr. Nickila's conclusions are the reports of Dr. Fechtel and Dr. Tiley. In December, 1980, Dr. Fechtel examined claimant for SAIF. He noted:

"* * * Subjective complaints far outweigh objective orthopaedic findings. * * * Again, pain complaints without significant muscle spasm, or neuro-tenderness in the expected regions further suggests that there is not a mechanical problem promoting the patient's pain problem. * * *

"The present complaints do not correlate with the mechanism of injury. Mechanism of injury is suggestive of acute lumbar sprain which should have resolved within two to three, or possibly four months. * * *"

In March, 1981, after x-rays, Dr. Fechtel said in response to SAIF's inquiry:

"This examiner reviewed this patient in orthopaedic consultation on Oct. 16, 1980. At that time it was my opinion that Mr. Poole did not present any biomechanical problem in the lumber spine and probably had significant psychogenic expansion of symptoms. X-rays taken at the time by Salem Radiology Consultants suggested some spondylosis deformens in the lumber spine. This would suggest a chronic progressive disorder in the lumbar spine. This patient very well may seek further manipulative treatments, these will probably alleviate some low back discomfort. However, the need for treatment would be consistent with the progressive underlying disorder and not a strain type injury in the lumber spine some years prior.

"In summary need for current treatment is not related to the compensable injury of 28 March 1978."

In April, 1982, Dr. Tiley reported:

"X-rays of the lumbosacral spine show some degenerative changes in a moderate amount and this seems to be perhaps a little bit more than was seen on a previous film. Again we counselled him with regard to back care. I certainly don't feel that any major treatment is necessary. He has disc degeneration of the low back but his symptoms are out of proportion to the amount of dysfunction that he manifests. * * *"

He wrote to SAIF:

"* * * Mr. Poole continues to receive chiropractic care for his degenerative disc disease which gives him temporary palliative symptomatic relief but is in no way curative. As can be seen in our clinic note, x-rays have shown progression of his degenerative disc disease and this is to be expected and natural and unrelated to any specific injury. * * *"

■ We are persuaded by the opinions of Dr. Fechtel and Dr. Tiley that claimant's chiropractic services are not necessitated by any physical condition resulting from the 1978 injury. Although there is evidence that at least some of claimant's symptoms are a result of the "conversion reaction" noted by the referee in 1980, claimant has not demonstrated that that condition necessitates this treatment. We agree with the Board that SAIF is not responsible for Dr. Nickila's bills.

■ Claimant argues that the Board's opinion is inconsistent with the 1980 order awarding 20 percent permanent partial disability, amounting to a "backdoor method of relitigating initial compensation." We do not find an inconsistency between the referee's 1980 order and the Board's conclusion that claimant's current treatment is not necessitated by his 1978 strain injury.

■ Claimant also requests penalties and attorney fees under ORS 656.262(10) for SAIF's delay in denying the claim. Assuming *arguendo* that the chiropractor's request for payment of medical benefits does constitute a "claim," ORS 656.005(7), 656.005(9), and that SAIF was thus required to give written notice of acceptance or denial within 60 days, ORS 656.262(6), under ORS 656.262(10) penalties can only be assessed on "amounts then due." Unlike the case of disability benefits, there is no duty to pay interim compensation for medical services pending acceptance or denial, ORS 656.262(6), and we have concluded that claimant was not entitled to payment of those bills. There were no "amounts then due," and no penalty can be assessed under ORS 656.262(10). *See EBI Companies v. Thomas,* 66 Or App 105, 111, 672 P2d 1241 (1983); *see also Kosanke v. SAIF,* 41 Or App 17, 596 P2d 1013 (1979).

■ Claimant also requests attorney fees pursuant to ORS 656.382 on the ground that SAIF "unreasonably resisted the payment of compensation." Even if SAIF was unreasonable in its delayed denial, under the circumstances it was not unreasonable in refusing to pay Dr. Nickila's bills.

Affirmed.